WARING *vs.* THE MAYOR AND ALDERMEN OF THE CITY of SAVANNAH.

[This case was argued at the last term and the decision reserved.]

1. The fifth paragraph of the fourth section of the third article of the constitution of 1868, Code, §5056, has no reference to ordinances passed by municipal authorities.
2. Property may be exempted from taxation by municipal authorities.
3. Gross earnings of merchants and others, and interest on bonds, notes, etc., etc., need not be taxed at the same rate as real estate.
4. Income is not property in the sense of paragraph xxvii, article I of the constitution of 1868.
   BLECKLEY, Judge, concurred *dubitante.*

Constitutional law. Municipal corporations. Tax. Before Judge Tompkins. Chatham Superior Court. May Term, 1877.

Reported in the opinion.

L. H. DEMONTMOLLIN; N. J. HAMMOND, for plaintiff in error.

JACKSON, LAWTON & BASINGER, for defendants.

JACKSON, Judge.

This was an affidavit of illegality to a tax execution, issued by the authorities of the city of Savannah, made before the mayor and council of the city, and overruled by them in council assembled. The case was carried by *certiorari* to the superior court of Chatham county, which court affirmed the judgment of the city tribunal, and Waring excepted and brings the case before us.

The following are the grounds of illegality set out in the affidavit:

Firstly. Because the mayor and aldermen of the city of Savannah, in passing the tax ordinance for said city, for the year eighteen hundred and seventy-five, and to enforce

which said *fi. fa.* has been issued and levied as afore-
said, violated the provisions of the fifth paragraph of the
fourth section of the third article of the constitution of
Georgia, inasmuch as said so-called ordinance refers to more
than one subject matter, to-wit: the raising of revenue
for said city and the compensation to be paid certain offi-
cials of said city therein named.   Wherefore it is void, and
no taxes can be collected from petitioner thereunder.

Secondly. Because the said mayor and aldermen of the
city of Savannah, in passing said so-called ordinance, entitled
" An ordinance to assess and levy taxes and raise revenue
for the city of Savannah ; to fix the salaries and compensa-
tion of certain officers and employees of said city, etc., for
the year 1875," did intentionally omit to impose any tax
whatever upon several million dollars' worth of property
located within said city, declared to be taxable under the
laws of Georgia, consisting, in part, of stocks in railroad
and other corporations, and liable to contribute its proper
proportion of taxes towards the support of the government
of said city, and, to that extent, have illegally increased the
burden of taxation upon petitioner's property (real estate),
while giving no proportionate advantage or benefit over
those whose property is thus illegally exempted by reason ·
of the failure to mention and tax the same in and by said
so-called ordinance, and have thereby relieved petitioner
from any legal obligation to pay taxes under the provisions
of said so-called ordinance upon said real estate in said city.

Thirdly. Because the said mayor and aldermen aforesaid
have, in and by said so-called ordinance, adopted a different
rule for the ascertainment of the taxes to be paid by the
real property of petitioner from that adopted for the ascer-
tainment of taxes upon bonds, judgments and certain other
personal property therein specified, in this, to-wit: while
real estate is taxed at the rate of two and one-quarter *per
centum* per annum, *ad valorem,* the tax on bonds, notes,
etc., is regulated by the amount of interest received thereon,

upon which interest so received a tax of one per centum is assessed. Wherefore petitioner claims the said tax of two and one-quarter *per centum* on real estate, the said *fi. fa.*, with proceedings thereunder, to be illegal.

Fourthly. Because, while the law of Georgia only authorized the exemption of fifty dollars' worth of household and kitchen furniture, the said mayor and aldermen of the city of Savannah have attempted throughout the year eighteen hundred and seventy five, by said so-called ordinance, to exempt three hundred dollars' worth of property from taxation, which exemption this petitioner here charges to be illegal, and alleges that said so-called ordinance is void by reason thereof.

Fifthly. Because the said mayor and aldermen of the city of Savannah, in and by said so-called ordinance, have deliberately attempted to make petitioner bear more than his proper proportion of the public burden, (which is common, and should be borne by all classes and property alike,) by making illegal exemptions from taxation, and unreasonable and illegal discriminations in favor of other classes of property in said so-called ordinance mentioned, and against the real estate of petitioner, all of which will appear by reference to said so-called ordinance. Wherefore petitioner says said so-called ordinance and *fi. fa.* are illegal.

Sixthly. Because the said mayor and aldermen of the city of Savannah, in and by said so-called ordinance, passed in council on December 30, 1874, entitled "An ordinance to raise revenue for the city of Savannah, etc., for the year 1875," and to enforce which said *fi. fa.* was issued and levied, have only imposed a tax of one *per centum per annum* upon the gross earnings of banks and bankers in said city, and upon interest on notes, judgments, etc., and upon commissions or income derived from certain kinds of business specified in the fifth section of said so-called ordinance, for the year 1875, all of which are taxable property under the laws of Georgia, while taxing, under the same so-called ordinance, and for the same period of time, petitioner's real estate at the rate of two and one-quarter *per centum per*

*annum ad valorem,* which discrimination petitioner avers is in violation of the twenty-seventh paragraph of the first article of the constitution of Georgia. Wherefore said so-called ordinance, and the *fi. fa.* to enforce the same, are illegal.

It will be seen that these grounds, when analyzed and reduced to the fewest number of propositions, amount to four : First, that the ordinance is void in that it contains two subjects matter; secondly, that it exempted certain property from taxation; thirdly, that it taxed real estate $2\frac{1}{4}$ per cent., and interest on bonds, notes, judgments, etc., and the gross earnings of banks it only taxed one per cent. ; and, fourthly, that it taxed incomes only one per cent., while taxing realty $2\frac{1}{4}$ per cent.

1. In respect to the first ground, we think that the provision in the constitution in respect to the title of acts, and the subjects matter thereof, have no application to the ordinances of cities. The words of the constitution of 1868 confine these requirements to the legislature, and the evident meaning restricts them to that body, and laws passed by that body. It would astonish the framers thereof, as well as upturn ninety-nine hundredths of the ordinances of our municipal legislatures, to give the article the construction desired by plaintiff in error. Code, §5056.

2. The second ground is ruled in the case of the *Mayor and Council of Athens vs. Long,* 54 *Ga.,* 330. It was there held that that corporation could exempt some property from any tax at all, and the two charters are alike.

3. The third objection to the ordinance is that it taxes realty in the city two and a quarter per cent., while it taxed the interest on bonds, etc., only one per cent.

By examining the ordinance it will be seen that in the former case the tax-payer is to return his property within ten days of the 1st of January, and what property in real estate he owned at that time ; while, in the case of the interest and gross earnings, etc., the return is to be made quarterly, and it is to embrace, not what the tax-payer had on

hand at the time he made the return, but what he had received during the quarter. So that it might be doubtful which tax was the heavier; at all events, it would require long and deep cyphering to ascertain precisely how much tax real estate should pay to make it equal to the tax upon gross earnings, interest on bonds, etc., etc., made during the entire year. In the case of real estate, the owner is only taxed on what he held on the 1st of January; in the case of interest, gross earnings, etc., etc., the tax is on all he made during the whole year. It is not easy to equalize the two.

As ruled by this court in the Athens case, " it is impossible that taxes shall be absolutely equal, and if there be no constitutional rule, the discretion to determine *the objects* and *the mode* of *taxation* must necessarily be left with that branch of the government to which the people have entrusted the power to tax."

Our constitution, at the date of this ordinance, declared that "taxes shall be *ad valorem only* and uniform on all species of property taxed."

This clause admits of two constructions, one, that *all property* taxed must be taxed uniformly, at the same rate; the other, that *each species* must bear the same rate. All must be *ad valorem*; but one species may be at one rate, and another at another rate.

From the language of Judge McCay, who was in the convention that framed the constitution of 1868, in the Athens case, it would seem that he construed it to mean that " upon whatever property a tax is laid, the same shall be by one uniform rate, according to its value." Such is his language, and by leaving out the word " *species,*" so as to have made the sentence not read " upon whatever *species* of property," etc., it would seem that his meaning was plain.

So the language of Chief Justice Warner in the Augusta case, 47 *Ga.*, 562, seems equally strong, if not stronger; and yet the Chief Justice meant that *each species* of property should be taxed the same rate. And, by an examination of those cases, it will be seen that the tax complained

of was all a tax on personal property—capital employed differently. So that the ruling in that case really is, that the tax upon capital—strictly so called—invested in banks, cannot be greater than that invested in bonds, notes, etc., etc.

The word "species" must mean something in the constitution. Code, §5019. Otherwise the framers of that instrument would have probably said, " *and* uniform on all property taxed," instead of " and uniform on all *species* of property taxed." The true interpretation of the clause is doubtful, and in case of doubt it is, perhaps, best, as we cannot ascertain the precise inequality in this case, to give the benefit of the doubt to the taxing power. Especially, as the Chief Justice, who delivered the opinion in the Augusta case, informs us that such was his construction and meaning in that case ; and his language seems to me to be stronger than that of Judge McCay in the Athens case, who may have spoken in view of the facts of that case, and who may have held the same view. Indeed, the principle ruled in the Athens case breaks up the *ad valorem* and uniform system, if it be construed to be applicable to all property. For, if one species of property can be left out and not taxed at all, what reason can there be for it to be taxed less than another species ; or rather, what right has the tax-payer on a different species of property to complain of a less tax on another species, when the tax-makers could have left out that species altogether, and taxed it nothing ? It is better for him that the other species should be taxed a little than not at all ; so that when the court decided that a municipal corporation might leave untaxed one species of property, it shut the mouth of tax-payers on other species to complain of a less tax than they paid on their property. In other words, if the corporation of Savannah could have left out altogether the tax on the interest on bonds, etc., and on gross earnings, etc., how can the plaintiff in error complain that it did tax these things, even though it did not tax them as much as it did his real estate ?

But suppose we should hold that the tax should be uniform—at the same rate—on the bonds, etc., as on real estate ; how shall we equalize it ? Shall we say that Mr. Waring shall pay less, or that the bonds shall pay more ? Have we power to do the latter? Clearly not. We are not the taxing power. If we undertake the former, how shall we go about it ? By what rule can we calculate the right tax on the business of people, their gross earnings, the interest they realize from notes, bonds, etc., etc., so as to ascertain what they pay *ad valorem,* and pronounce Mr. Waring's tax good and valid up to that point, and illegal beyond it ? Has he himself paid what he admits is legal and right ? Surely that ought to be paid before he stops the collection of the remainder.

It seems to us that this record would involve us in inextricable trouble—to determine how much he ought to pay— if we adopted the construction of the constitution asked for by the plaintiff in error, and that it could not be calculated with tolerable accuracy.

But are gross earnings and interest, coming in from any source, labor, capital, investment of any sort, money loaned— are these things property in the sense of the constitution, and to be taxed as real, genuine property—such as real estate and personal effects,—or are these really *income ?* Certainly the gross earnings of a laboring man are nothing but his income ; so, it would seem, the earnings of a salaried officer are income ; and, so, the income from capital employed in a bank, or railroad, or manufactory, would seem to be income only. The net income, after expenses are paid, becomes property when invested, or if it be money lying in a bank, or locked up at home. But, to call it property when it is all consumed as fast as it arises—going on the back, or in the stomach, or in carriages and horses (which are taxed), or in travel and frolic—to call such income, so used, property, would seem to be a perversion of terms.

4. So that, perhaps, the true question is this: is income property, in the sense of the constitution, and must it be taxed at the same rate as other property?

It seems to us that it is not property, and it has been held not to be since the Hartridge case, in 8 *Ga.*, 23. The legislature has taxed it differently from property from that day to this: Code, §§799, 804, 4847, acts of 1868, 1869, 1871–2, etc., etc., down to this day. The fact is, property is a tree; income is the fruit: labor is a tree; income, the fruit; capital, the tree; income, the fruit. The fruit, if not consumed as fast as it ripens, will germinate from the seed which it encloses, and will produce other trees, and grow into more property; but so long as it is fruit merely, and plucked to eat, and consumed in the eating, it is no tree, and will produce itself no fruit.

In view of this whole record, it is not plainly made to appear to us that the court below erred in sustaining this ordinance of the city of Savannah, as within the constitutional powers conferred upon it, and the judgment is, therefore, affirmed.