21223. BROOKS *et al.* v. CARTER, Tax Collector, *et al.*

CANDLER, Justice. On December 20, 1960, C. E. Brooks, Jr., and eleven others filed a suit in the Superior Court of Miller County against that county's Tax Collector, Tax Receiver, Sheriff, and the members of its Board of Tax Assessors, both individually and in their respective official capacities. In substance the petition as amended alleges: At the beginning of 1960, the Miller County Board of Education owed approximately $60,000—an indebtedness which had accumulated from the operation of the county's common-school system. On January 19, 1960, and at a conference between the members of the county's Board of Commissioners of Roads and Revenues, its Board of Education, and its Board of Tax Assessors, the latter agreed to increase the 1960 value of all property, both real and personal, within the corporate limits of the City of Colquitt by 140% over its assessed value for 1959, and to increase the value of all farm land in the county from its 1959 assessed value of $8 per acre to $19.20 per acre. Petitioners subsequently returned their property to the county's tax receiver at its just and fair value—the value at which it was assessed for 1959 taxes. The members of the Board of Tax Assessors subsequently increased the taxpayers' returns and assessed their property at the value they had agreed to do, and such increases were made without any inquiry or investigation being first conducted by them for the purpose of ascertaining the 1960 value of their property for tax purposes. Based on the value at which they returned their respective property for 1960 and the tax rate fixed for such year, they tendered to the county's tax collector prior to December 20, 1960, the amount of tax each was due for such year, which he declined to accept. Besides for process, rule nisi, service, and general relief, the prayers are that the tax collector be restrained and enjoined from issuing executions against the plaintiffs: that the sheriff be restrained and enjoined from levying such executions on their property and from selling the same thereunder; and that the assessments made against their property be declared illegal and for that reason canceled. Answering the amended petition, the defendants denied that the returned value of any taxpayer's property had been arbitrarily increased for the

alleged purpose of raising additional school funds, and averred that the county's tax assessors had examined all returns for the purpose of equalizing values of like properties and seeing that all property in the county was returned and assessed for taxes at its just and fair value. At a chambers hearing and after the parties had introduced their evidence, the court dissolved the restraining order which he had previously granted and denied the prayer for a temporary injunction. The plaintiffs excepted to that judgment. *Held:*

1. "The granting and continuing of injunctions shall always rest in the sound discretion of the judge, according to the circumstances of each case. The power shall be prudently and cautiously exercised, and except in plain and urgent cases should not be resorted to." *Code* § 55-108. And where the record does not affirmatively show that the trial judge has abused his discretion in refusing to grant a temporary injunction, this court will not reverse his judgment. *Maynard v. Griffin,* 147 Ga. 293 (93 S. E. 401).

2. It is the duty of each county board of tax assessors in this State to see that all taxable property within such county is annually returned and assessed at its just and fair value, and that valuations as between the individual taxpayers of the county are fairly and justly equalized so that each taxpayer shall, as nearly as possible, pay his proportionate part of the tax levy; and to accomplish this end, the board of tax assessors is required to examine the returns of all taxpayers and, if it finds that any taxpayer has failed to return his property at a just and fair value, it is required to correct such return so as to equalize its value with the returns of other taxpayers of the county who have returned their property for taxation at a just and fair value. *Code* § 92-6911. It is clearly the intent and purpose of our tax laws that all taxable property, real and personal, in the several counties of this State be annually returned and assessed for taxes at its just and fair value so that the tax burden will be borne by each taxpayer in that proportion which the just and fair value of his property bears to the just and fair value of other taxpayers' property of a like character and value.

3. While the evidence which the parties introduced on the interlocutory hearing of this case is conflicting, the trial judge was nevertheless authorized to find from it the following facts:

For several years prior to 1960, the taxpayers of Miller County had returned their property for taxation at amounts far less than its just and fair value. During January 1960 and at a mass meeting held in the grand-jury room of the Miller County courthouse, which many of the officials and taxpayers of the county attended, the deplorable financial condition of the county, especially as it related to inadequate funds for the continued operation of its school system, was discussed, and it was then agreed by those present that it would be necessary for the taxpayers of the county to increase substantially the amounts at which they had been returning their property, real and personal, for taxation. For the 1960 tax year, 2,094 persons made tax returns to the county's tax receiver and, after an examination of them, the county's board of tax assessors found that 1,769 of them had voluntarily returned their property at its just and fair value. The board increased the returns of the remaining 325 so as to equalize them in value with the returns of the 1,769 who had, in the board's opinion, properly valued their property for tax purposes. Of those whose returns were increased by the board, only 12 have contested the board's action by this or other similar litigation and, as to these 12, the board's increases in value range from 12% to 176% higher than the value at which it was returned by them. Applying these facts to the principles of law stated in the two preceding divisions of this opinion, it cannot be said by this court that the trial judge abused his discretion in refusing to grant a temporary injunction. On their facts, *Green v. Calhoun*, 204 Ga. 550 (50 S. E. 2d 209), and *Hutchins v. Howard*, 211 Ga. 830 (89 S. E. 2d 183), as cited and strongly relied on by the plaintiffs in error, are clearly distinguishable from the facts in this case, and for that reason those cases are not here controlling authority, as the plaintiffs contend. The *Green* case was reversed by this court because the board made no effort to equalize valuations as between the individual taxpayers, but systematically and arbitrarily increased by 25% the amount at which each taxpayer had returned his respective realty, and because such an increase in realty values was made for the sole purpose of raising additional funds for educational purposes. The *Hutchins* case was likewise reversed because of the board's discrimination in fixing the just and fair value for

tax purposes of realty located in different sections of the county and for different classes of tangible personal property.

*Judgment affirmed. All the Justices concur.*

ARGUED MAY 8, 1961—DECIDED MAY 22, 1961.

*Vance Custer, Harold Lambert,* for plaintiffs in error.
*W. L. Stone, J. A. Drake, Stone & Stone,* contra.